## Laughlin v. Neeley's Executrix, et al.

### (Decided March 20, 1928.)

### Appeal from Fayette Circuit Court.

1. Wills.—Under Ky. Stats., sec. 2344, where will disposes of estate if devisee dies without issue, if there is no intervening estate and no other party to which the words "dying without issue" can be reasonably referred, in absence of something in will evidencing a contrary intent, they create defeasible fee, which is defeated by death of devisee at any time without issue then living.

2. Wills.—Where grandmother devised residue of estate to grandson and if he died without descendants of his body, at his death, after specific bequests, remainder of estate was to be divided into three parts to go to her heirs, since there was no intervening estate created by her will, the words "dying without descendants" would be held to refer to grandson's death at any time unless a contrary intent appeared from the will.

3. Wills.—Where a grandmother devised residue of estate to a grandson and provided that guardian control his estate until devisee became of age, at which time guardian was required to turn over to grandson estate to be used for his maintenance and support, and further provided that should grandson "die without descendants," estate was to be divided and go to grandmother's heirs, words "dying without descendants" did not refer to devisee's death

before majority, where will provided safeguards for investment of estate for grandson's maintenance after that time.

4. **Wills.**—Where a grandmother devised residue of estate to a grandson, throwing safeguards around its investment, and provided that if grandson should die without descendants of his body, remainder of estate was to be divided into three parts and go to her heirs, grandson took defeasible fee in both real and personal property, subject to contingency of his dying at any time without descendants of his body.

FRANK L. McCARTHY and JOHN B. SHANNON for appellant.

FORMAN & FORMAN and JAMES M. DURBIN for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Claiming an absolute estate in certain real and personal property devised him by his grandmother, Nannie W. Neeley, Jesse M. Laughlin, nee John B. Murillo, Jr. (his name having been changed by an order of court), brought this action under the Declaratory Judgment Act to construe the will of his grandmother, Nannie W. Neeley. The fifth paragraph of that instrument provides:

"I will and bequeath to my grandson, John B. Murillo, Jr., all the remainder and residue of my property, real, personal and mixed, to be held by him under the following terms and conditions. Should I die before my said grandson reaches the age of twenty-one years, his guardian, to be named by me, shall manage and control his estate until he is of age, at which time he shall turn over to my said grandson all of my estate to be held and used by him and for his maintenance and support. I hereby direct my said grandson to keep the property received by him invested in real estate or good interest bearing securities, the interest and income to be used after paying taxes and necessary expense by him, but he is not to use any of the principal unless an emergency should arise in which the income would not properly support and protect him, in which event he may by petition apply to the Fayette county court and upon proof, said court may by order permit him to use a sufficient amount of the principal to meet the emergency.

"My grandson, by the written consent of his attorney, shall have the power to sell any real or

personal property, received by him under this will, but in the event he sells either personal or real property, the proceeds derived from the sale, shall be reinvested in real estate, to be held by him as the original was held. He shall also have the right at any time to sell for reinvestment any property in which he may have invested the proceeds derived from any previous investment of sale, and before any title shall pass to any property held by him at my death, or acquired by him by investment, he shall first obtain the written consent of his attorney. It shall be the duty of his attorney to see that the proceeds from any sale of any property held under this will is reinvested, and should any attorney give his written consent to a sale and fail to see the proceeds are reinvested, as herein directed, he shall become liable to my estate for any loss arising from his neglect to do so.

"Should my said grandson be so unfortunate as to be divorced from any wife he may have, neither the principal nor income shall be liable for alimony or her maintenance, it being my intention through the income from my estate, to provide for only the support of my grandson and his wife and children living with him.

"Should my grandson die without descendants of his body, at his death it is my will that $5,000.00 go to the First Baptist Church of Lexington, Kentucky; $5,000.00 to Guerrant Mission, located at Gurant, Breathitt county, Kentucky, and all the remainder and residue to be divided into three equal parts, one to go to Abbie Williams or her heirs; one to go to Dorothy Kaberna or her heirs and the other to go to Julian Laughlin, son of Tarlton C. Laughlin or his heirs."

Kentucky Statutes, sec. 2344, is thus epitomized in the fourth rule of classification appearing in Harvey v. Bell, 118 Ky. 512, 81 S. W. 671, 26 Ky. Law Rep. 381:

"On the other hand, where there is no intervening estate, and no other period to which the words 'dying without issue' can be reasonably referred, they are held, in the absence of something in the will evidencing a contrary intent, to create a defeasible fee, which is defeated by the death of the devisee at any time without issue then living."

In a number of later cases this rule and the statute upon which it is based were overlooked, but in Atkinson v. Kern, 210 Ky. 824, 276 S. W. 977, upon a review of all the authorities, the rule was reaffirmed, and all cases holding to the contrary were overruled. This case was followed and approved in Ireland v. Cooper, 211 Ky. 323, 277 S. W. 483, in which the following language is used:

> "Where there is no intervening estate, and nothing appears in the will to the contrary, the presumption as to personalty is that the dying without issue has reference to the death of the devisee before the testator, but as to realty it refers to his death at any time."

As there was no intervening estate created by this will, the words "dying without descendants" must refer to a death at any time, unless a contrary intention appears from other language therein. Pursuing this inquiry we find, "He is not to use any of the principal unless an emergency shall arise. . . . In that event he may by petition apply to the Fayette county court and upon proof said court may by order permit him to use a sufficient amount of the principal to meet the emergency." He may with the written consent of his attorney sell the real or personal property, but if he does so the proceeds are required to be reinvested to be held as the original is held. The same provisions are repeated as to subsequent sales and reinvestment, making his attorney liable for failure to reinvest. And in the event of his marriage and divorce, "no part of the principal or income shall be liable for alimony or maintenance, it being my intention through the income from my estate to provide for only the support of my grandson and his wife and children living with him." These provisions of the will show clearly that the testatrix did not intend to vest a fee-simple title in Murillo but in the event of his death without issue that aside from the contingent charitable devises named, it was her intention for her bounty to be enjoyed by her blood relatives only. Instead of showing that the limitation of dying without issue referred to any particular period, it is clear from the language of the will itself that she intended for the limitation to refer to his death at any time; and these provisions are in entire harmony with the rule quoted, supra, from Harvey v. Bell.

It is next insisted that, as the will provides for the estate to be turned over to Murillo at the time he became 21 years of age, the limitation of "dying without descendants" refers to his death before that time, and upon his reaching that age the fee vested. Reliance is had on the second rule of classification in Harvey v. Bell, and a long line of cases of which McCauley v. Dale (Ky.) 108 S. W. 268, 32 Ky. Law Rep. 1243, is an example, in which provisions fixing a time for the division or distribution of the estate or of turning it over to the devisee are construed as the date at which such contingency determines and the fee vests. If testatrix had done this and said nothing further this construction should prevail, but, as we have seen, all the safeguards that she threw around the estate during the infancy of Murillo were to continue after he attained his majority for the benefit of the contingent remaindermen, except that he was thereafter to manage and control it and to use the income, thus negativing any idea of vesting a fee at that time; hence this rule does not apply.

It is also strongly argued that as to personal property, the words "dying without descendants" refer to the death of the devisee before the testatrix, and that where both realty and personalty are jointly devised this rule must be applied to both; that therefore Murillo took an absolute estate in both classes of property upon the death of his grandmother, reliance being had on Ireland v. Cooper, supra. In that case one of the children was devised the debts due by him to his father. There was a similar devise to a second, coupled with certain realty. Others were devised realty. Testator's money and choses in action after the payment of his debts and funeral expenses were to be equally divided, with the further provision:

"Also I desire that if any of the heirs above named should die without issue the property herein bequeathed by me to them shall 'revert' back to the surviving heirs to be divided amongst them."

The court referred to the contrary rules of presumption in reference to realty and personalty, and concluded that the personalty was of such a character that the testator must have intended that it should vest absolutely upon his death, and that the will further indicated that the bequest to each of the named beneficiaries should be

affected in precisely the same manner by the limiting clause, and that this effect could not be given if one presumption was indulged as to personalty only and another as to realty alone, and in construing the entire will reached the conclusions that both estates vested in the devisees at the death of testator. Here, also, the language of the will construed as a whole indicates that it was the intention of testatrix for both classes of property to be held and used in the same way, to be subject to the same limitations, and for such limitation to terminate at the same time as to both. But it is distinguished from the Ireland case in that it clearly postpones the limitation of "dying without issue" beyond her lifetime.

It follows that appellant took a defeasible fee in the real property and a like estate in the personalty subject to the contingency of his dying at any time without descendants of his body. It was so held by the chancellor, and this is the only question raised on this appeal, though it may be said that in an able opinion and judgment the various details concerning the powers and duties of the devisee under the will were construed and adjudged.

Wherefore, perceiving no error, the judgment is affirmed.