## Whitlow's Administrator et al. v. Saunders' Administrator.

(Decided March 13, 1931.)

WILLIAMS & HANDLEY for appellants.

ABEL HARDING for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

J. W. Whitlow died a resident and citizen of Hart County, Ky., some fifteen years before the filing of this action in the Taylor circuit court, which was on July 5,

1930, and shortly after his death his will, which was executed on December 9, 1907, was duly probated in the county court of Hart county. His property consisted of two farms in Hart county and one in the state of Texas and about $2,500 in personalty. After providing in his will for the payment of his debts and funeral expenses, and the setting apart of an acre of land out of his home place for a cemetery, he said in the third clause of his will:

"I will that one-seventh of my estate be equally divided between my three grand children (namely) J. A. and Grace T. Rogers, and Minnie L. Jaggers." The fourth clause of his will reads: "I will that the remainder of my estate be equally divided between my three daughters, Malisa G. Rogers, Mollie E. Puckett & Ara M. Saunders, and if any of the above named should die leaving no bodily heirs I will that such an one's part go back to my estate be divided as above stated," while the caption thereto says: "This, the last will and testament of J. W. Whitlow, Fairthorn, Ky. in Hart County, do hereby will and bequeath all my estate both real and personal as follows."

The testator left surviving him as his only heirs at law three daughters, each of whom was married, and their married names were as is stated in the inserted fourth clause of the will. Mrs. Rogers, at the time of the execution of the will and at the death of the testator, was the mother of J. A. and Grace T. Rogers, who are named in clause 3 of the will, and Mrs. Puckett at the same time was the mother of Minnie L. Jaggers, also named in the third clause, while Mrs. Ara M. Saunders, the third daughter, was not the mother of any children at those times, though she had been married for more than fifteen years, and when she died many years later she was still childless. The other two daughters also died before the filing of this action without becoming the mother of other children so far as this record discloses.

Following the death of the testator and the probate of his will, and in some manner not disclosed by the record, his landed estate was sold and converted into cash, and the proceeds therefrom amounted to a net sum of nearly $9,500, and it is alleged in the petition that upon final settlement by the executor there was paid to each of the three daughters under the fourth clause of the will

the sum of $3,600. Mrs. Saunders, who received her stated portion, lived with her husband in Taylor county, and she died testate and a resident of that county. Her will was probated in the county court of that county and her husband was designated and qualified as its executor. At that time the other two daughters had died leaving surviving them the three grandchildren referred to, who had become adults and some of them married, as the only descendants and heirs of the testator.

In conjunction with C. B. Dowling, Administrator de bonis non of the estate of J. W. Whitlow, they filed this action in the Taylor circuit court against the executor of Mrs. Saunders to recover the amount of money that had been paid to her under the will of their grandfather. The petition alleged the facts as hereinbefore recited and bottomed the right of plaintiffs to recover upon the fourth clause of the will, which in part says: "if any of the above named (his three daughters) should die leaving no bodily heirs I will that such an one's part go back to my estate (and) be divided as above stated." We feel authorized under familiar rules to insert the word "and" as we have done in parenthesis, since it is plainly manifest that it was omitted by oversight or mistake. In the will of Mrs. Saunders she acknowledged her indebtedness by note to the Campbellsville College of Campbellsville, Ky., in the sum of $12,000 and specifically directed her executor to pay it along with her other creditors. Defendant filed a special demurrer to the petition based upon two alleged grounds: (a) That the Taylor circuit court had no jurisdiction of the action, and (b) that, inasmuch as plaintiffs filed as an exhibit with their petition a copy of Mrs. Saunders' will, the creditor of Mrs. Saunders, the Campbellsville College, should have been made a party defendant. The court overruled the demurrer as rested on ground (a), but sustained it upon the other ground, and at the same time sustained defendants' general demurrer to the petition, which he had filed without waiving his special demurrer, and, upon plaintiffs declining to plead further, their petition was dismissed, from which they prosecute this appeal.

We conclude that we need spend but little time or devote but small space in the discussion of the grounds of the special demurrer. This action is not one that is localized by any statutory provision or other rule of practice. It is one for the recovery of money, and is

essentially personal in its nature. Therefore the Taylor circuit court had jurisdiction, since the only defendant in the case resided and was summoned in that county. The other ground (b) is equally without merit, since this action is not one to settle the estate of Mrs. Saunders, but is exclusively one to recover an alleged debt against her personal representative as one due from her. Her creditor, the Campbellsville College, can look only to her estate for the payment of its debt, and from which necessarily follows that it has no right to liquidate its debt with property that she may have had in her possession but which did not belong to her. The error of the court in sustaining the special demurrer upon this ground is so plainly manifest as to not merit serious discussion. No case is cited by counsel for defendant supporting that ruling of the court.

But he vigorously contends in support of the general demurrer that it was not shown that Mrs. Saunders at the time of her death, or that her personal representative since then, was in possession of the identical $3,600 paid to her as her share of her father's estate, and that, inasmuch as that fact does not appear, plaintiffs have no right to recover any sum whatever from her estate, regardless of the other merits of their claim, and that, if they should be permitted to do so, "Campbellsville College would be seriously prejudiced and it would be deprived of its property without due process of law," and which, if true, the court should not hesitate to come to the rescue of defendant to avert such serious and calamitous consequences.

Our opinion in the case of Lightfoot v. Beard, 230 Ky. 488, 20 S. W. (2d) 90, cited in support of this contention, nowhere deals with the question. Nor does section 24 of the Civil Code of Practice, also cited in brief of counsel for defendant on this point, have any application whatever to the question under consideration. All creditors of Mrs. Saunders, including of course, Campbellville College, are represented in this action by her personal representative whose duty it is to protect her estate against invalid claims, for and on behalf of her creditors, as well as to protect her devisees or heirs. But, perhaps, if a creditor desired to intervene in the cause in defense of what he or it conceived to be an unjust claim it should be permitted to do so. However, no effort of that sort was made in this case, and that question is not before us. It is sufficient to say that neither ground urged in

support of either the special or general demurrer was sufficient to authorize the court to sustain it.

In the case of Atkinson v. Kern, 210 Ky. 824, 276 S. W. 977, the applicable rule for the interpretation of similar provisions in wills and deeds, and especially as applied to transferred real estate, was before us for consideration, and prior conflicting cases which arose between that date and the rendition of our opinion in the case of Harvey v. Bell, 118 Ky. 512, 81 S. W. 671, 26 Ky. Law Rep. 381, were reviewed and those in conflict with the conclusions therein reached were overruled. That conclusion was, that, as to real estate, this court would be governed by the interpretative rule enacted in section 2344 of our present Statutes, i. e., that in deeds and wills conveying or disposing of real estate and containing a limitation over after the death of a prior taker "without heirs," "without children," "without issue," or similar expressions, the limiting event refers to a death of the prior taker at any time, but, as required by the statute, that interpretation would not be made if the conveying instrument in its entirety contained language indicating a contrary intention on the part of the one who executed it.

In the later case of Ireland v. Cooper, 211 Ky. 323, 277 S. W. 483, we held that the rule as adopted in the Atkinson opinion with reference to realty should be reversed when the conveying instrument disposed of personal property, i. e., that the words "dying without issue," and others of similar import, in that case would refer to a death of the first taker before that of the one from whom he obtained the property, unless a different intention appeared from the entire language of the instrument. In other words, the section of the statute supra, which is a part of our statute relating to "Land" and is a part of an act of the Legislature in 1893, the title to which is, "An act relating to Realty," fixed the contingent event of the vesting of the limitation over, at the death of the first taker at any time, and for that interpretation to be discarded a contrary intention should appear from the language of the conveying instrument itself; whilst, as applied to personalty, such contingent event referred to a death of the first taker before that of his conveyer, unless a different interpretation should appear from the face of the conveying instrument, and there is nothing in the case of Ward's Guardian v. Ward's Executors, 221 Ky. 391, 298 S. W. 938, to the

contrary. In the still later Lightfoot Case supra, we applied the interpretations as above outlined, and held that the language of the will involved in that case exhibited an intention on the part of the testator to make the real estate rule of interpretation applicable to personal property also, and in this case we have arrived at the same conclusion.

It will be observed that the testator in the caption supra to his will makes its provisions cover all of the estate "both personal and real," and in its fourth clause he makes no devise over after the death of the first taker "leaving no bodily heirs" to any other named person or persons, except in so far as they may be his heirs, for he says that in that event "such an one's part (shall) go back to my estate and be divided as above stated." In other words, the share of the one who died barren of issue shall immediately become a part of the testator and be divided in the manner indicated in his will, and which to our minds shows an intention on his part to provide for such a death at any time, so that in no event would any of his property find its way into the hands of strangers in blood to him. Perhaps an exactly proper interpretation of Mr. Whitlow's will would require that, upon the happening of such a death, one-seventh of the share of the one who died should be given to the grandchildren, and the other six-sevenths be divided between his daughters or their heirs; but, since the grandchildren are now the only heirs of the testator in this case, it makes no difference whether that interpretation should or not be followed.

However, but a very small part of the portion of the testator's estate, if any of it that was paid to Mrs. Saunders, consisted of personal property of the testator, although it is seriously argued by counsel for defendant that all of it was personal property, and which is done by him upon the theory that when she received it it was actually personal property. But he overlooks the fact that what she obtained under her father's will was her joint interest in the real estate of which he died seized and which was later in some manner converted into personal property. So that, the "real estate" rule supra, applies here rather than the one relating to personalty. Having arrived at the conclusions expressed, it follows that the court also erred in his interpretation of the will and in sustaining the general demurrer to the petition

and in dismissing it on that ground, since under our interpretation of it her title to her portion of the property devised therein was a defeasible one subject to be defeated by her not leaving issue at the time of her death when the corpus of what she so received, in that event, should be distributed as the will directs; in other words, that her estate in the event that actually happened should account to those entitled to it under the will in such contingency.

Wherefore the judgment is reversed, with directions to set it aside, to overrule both the special and general demurrers to the petition, and for proceedings consistent herewith.